# UNITED STATES COURT
# DISTRICT OF MASSACHUSETTS

**Docket No. _____**

**SABRINA MARIE WADHAMS,**
*Plaintiff*

**v.**

**AMERICAN FEDERATION OF TEACHERS,**
*Defendant*

## COMPLAINT

## PARTIES

Sabrina Marie Wadhams is a natural person living in Massachusetts.

American Federation of Teachers [AFT] is a union headquartered at 555 New Jersey Avenue, N.W., Washington, D.C. 2001.

## JURISDICTION

Subject matter jurisdiction is proper in this Court where the amount in controversy exceeds $75,000 and where Plaintiff and Defendant are from different states. [28 U.S.C. § 1332].

Personal jurisdiction is proper over the American Federation of Teachers because it is an entity with sufficient minimum contacts with Massachusetts such that this particular suit does not offend traditional notions of fair play and justice. The Massachusetts division of AFT is known as American Federation of Teachers Massachusetts, with headquarters in Boston.

## VENUE

Venue if proper in this jurisdiction because corporate entities reside in any district that may exercise personal jurisdiction over them. [28 U.S.C. § 1391].

## **FACTS**

1 Plaintiff is a special education teacher and registered ABA behavior therapist with a master's degree in special education.

2. The Plaintiff signed a contract with the Corpus Christi Independent School District [CCISD] on 9 May 2017 to work as a teacher in the 2017-2018 school year.

3. The Plaintiff's employment designation was, "classroom teacher" and the room was identified as "an autistic room"

4. Teaching staff at the CCISD at their option, can be represented by the American Federation of Teachers [AFT], or join AFT as a union member.

5. Plaintiff was assigned a teaching position in a special room with four students.

6. The room was known among CCISD staff persons and AFT union members as the "secret room."

7. Plaintiff was unaware that the room was called the "secret room."

8. Students in the *secret room* were known to behave in ways that were dangerous to themselves and others-- staff and students alike.

9. The behavior of the students made the room a known occupational hazard-- unsafe to staff assigned there.

10. One student assigned to the *secret room* had bitten off the nipple of one teacher and had nearly severed the finger of another.

11. The dangerous, unsafe, and occupational hazards of the *secret room* were not known to the Plaintiff until Plaintiff began working in the room.

12. The designation *secret room*, was not known to Plaintiff until after the designation was revealed to a friend of Plaintiff, Mark Henderson [Henderson] during a meeting with an AFT representative. [Affidavit of Mark Henderson].

13. Classes in the secret room were videotaped in addition to audio recording in the class restroom.

14. On information and belief, those videotapes and audio recordings are in the possession of CCISD.

15. The Plaintiff was injured on four separate occasions in the *secret room,* requiring outside medical attention.

16. After Plaintiff's first injury, and subsequent emergency hospital medical care Plaintiff was instructed by the CCISD principal to not report injuries and that it wasn't necessary to report to a doctor every time Plaintiff was hit in the head by a student.

17. Plaintiff early on noted that the individualized education program [IEP] folders for students in the *secret room* were either empty or contained entries that did not corroborate student behavior, or record the student's level of education learning and advancement in the classroom.

18. Contrary to what had gone on before, Plaintiff began documenting student behaviors and events in the *secret room* as required by law.

19. After the Plaintiff's second injury on 28 September 2017, and subsequent emergency hospital medical care, Plaintiff secured the legal representation of AFT. Plaintiff sought to remove students with violent behavior from the classroom or be reassigned to a different special education position.

20. Assault leave, although available, was not discussed by either the CCISD or the AFT.

21. The Plaintiff was injured a third time on 6 October 2017 and secured emergency hospital medical care when punched in the back of the head by a student while working in the *secret room*.

22. On 3 November 2017, Plaintiff was seriously injured in the *secret room*, and was taken by ambulance to Shoreline Hospital, Corpus Christi, Texas, and secured emergency hospital medical care for the fourth time

23. Plaintiff was treated for injuries to her left-side cheek, arm, torso, hip, and thigh.

24. Plaintiff was released, and met by friend Henderson.

25. On 4 November, Plaintiff was taken by Henderson to the Doctors Center where a decision was made to admit Plaintiff to Bayview Behavioral Center, [Bayview], for additional subsequent emergency hospital medical care Both facilities are in Corpus Christi.

26. On 20 October 2017, Plaintiff had received a notice from CCISD alternately identified as a letter-of-reprimand, and a letter-of-concern.

27. The notice was signed by Principal Javier Granados, and stated, "Our concern is not following your student's Individual Education Plans, not updating their goals/objective's [sic] and PLAFF's after the 1st 6 weeks and preparation of the student Annual/REED meeting."

28. AFT members are protected by what the union refers to as, *Weingarten* rights. "If your supervisor questions you to obtain information which could be used as a basis for discipline or asks you to defend your conduct, that is considered an investigatory interview. If this is happening, you should call your steward, campus lead steward or union office immediately." [http://www.ura-aft.org/for-members/right-to-representation/].

29. The letter-of-reprimand had invited the Plaintiff's defense of Plaintiff's conduct.

30. Plaintiff took exception to the notice from Principal Granados and on 30 October 2017 sent a formal response to the Granados notice..

31. On 2 October 2017, Plaintiff signed a contract for legal representation with AFT Local 3456. This is a contract above and beyond the representation afforded by mere union membership.

32. After Plaintiff filed a grievance against Javier Granados, Principal at Martin Middle School, Plaintiff was urged by the AFT to sign a separation agreement drafted by CCISD which would include a letter-of-resignation signed by the Plaintiff effective 31 January 2017.

33. Plaintiff cancelled Plaintiff's contract for representation by the AFT on 8 December 2017 because upon information and belief, Plaintiff observed that the CCISD and the AFT were colluding to resolve her situation quietly and not in her best interest.  The AFT acted in bad faith.

34. Henderson met with AFT union representative Jerry Quinones for more than three hours on 6 November 2019. [Affidavit of Mark Henderson].

4

35. During the meeting, Henderson learned for the first time that the autistic room had a special name with AFT representatives and CCISD staff-- the *secret room*. Henderson reported that fact to the Plaintiff on 7 November 2017 when Plaintiff was a patient at Bayview.

36. Additionally, during the 6 November meeting with Quinones, Henderson was advised:

A. That the Plaintiff's credentials were invaluable to the perpetuation of the *secret room* and the federal funding the secret room generated for CCISD.

B. That the secret room was known about and feared by CCISD staff and that it had existed for about 30 years.

C. That the room served special purposes including placing teachers therein to induce their early retirement over the fear of potential injury.

D. That Quinones knew personally about the secret room because he had been a CCISD special education teacher.

E. That the Plaintiff had been instructed by Quinones to lock the problem student in a room for the duration of the teaching period and stay away from him.

F. That if Plaintiff didn't sign a prepared separation agreement, she would never again hold a Texas teaching position except perhaps in, "the valley," an undesirable area of the state.

G. That Quinone's opinion was that the Plaintiff had only one choice-- a leave-of-absence under FMLA, because CCISD would not again approve paid administrative leave as CCISD had after the first three incidents.

H. That according to Quinones, it was incumbent on Henderson to convince the Plaintiff of her limited options, or else there would be consequences against the Plaintiff by CCISD and that it would be Henderson's' fault for Plaintiffs sufferings.

37. During the meeting between Henderson and Quinones, AFT representative Guajardo entered the training and whispered to Quinones, who spoke immediately and stated that the Plaintiff was to have been terminated on Friday afternoon of 3 November 2017.

38. On 7 November 2017, Henderson relayed the AFT information he had learned in the meeting with Quinones to the Plaintiff at Bayview.

39. The Plaintiff instructed Henderson to submit her rebuttal letter to the AFT for delivery to the CCISD.

40. AFT hadn't sent the letter because, as Quinones stated, AFT didn't have the release from the Plaintiff, an allegation the Plaintiff disputes.

41. In a subsequent 9 November meeting with Quinones, Quinones told Henderson that he and others had listened to the audio tape of the 3 November injury and that clearly, according to Quinones, a terrible – god awful head-butt was heard amid yelling and commotion.

Additionally, on 9 November, Quinones advised Henderson that:

41A.  CCISD has it in for the Plaintiff.

41B.  That the paraprofessional that witnessed the 3 November injury might lie to protect her own interests and guarantee long term employment by CCISD *outside* the *secret room*.

41C.  That the Plaintiff needed to: keep quiet about the *secret room*; take FMLA for twelve weeks without pay; not file for assault leave nor file any grievance, and to just let the district find her another job.

41D. That if the Plaintiff didn't cooperate, drug charges could be fabricated to disparage her reputation.

41E. That the CCISD plan was to clean-up the secret room and move it to another school to get rid of the evidence.

41F. That in Quinones opinion, the Plaintiff's injuries were caused by her own negligence for not locking the dangerous student in a room for the duration of the school day.

41G.  That there was no other place for dangerous students of this sort because the nearby state psychiatric hospital had closed.

6

42H—Mr. Quinones solicitation to Mr. Henderson was construed by Henderson as an offer to join as a conspirator with the AFT in a black mail attempt against Plaintiff to not reveal the *secret room* or suffer future career-ending consequences.

42I—Plaintiff would endure damage to her career; a complete denial of workman's compensation injury claims; denial of therapy causing undue financial harm to Plaintiff, delaying her recovery.

43. In short, it was as Mr. Quinones had predicted-- there would be consequences if the Plaintiff didn't play along with the the AFT and the the CCISD.

44. With opportunities withdrawn from her in Texas, the Plaintiff relocated to Massachusetts where she now holds a teaching position.

## **CAUSES OF ACTION**

### **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

In this jurisdiction, four elements must be proved by a preponderance of the evidence: that the Defendant owed the Plaintiff a duty of care; that that duty was breached; that the Plaintiff was injured by the breach, and that there is a causal link between the conduct of the Defendant and the injury to the Plaintiff.

In the case at hand, the Defendant was contractually charged with protecting the interests of the Plaintiff. Contrary to that duty, the Defendant stood by as the Plaintiff was put in harm's way. The Plaintiff was physically injured on four separate occasions in the *secret room* and suffers resulting emotional injuries to this day.

The AFT by its agents knew the inherent dangers that awaited professionals and students that entered the *secret room* but stood idly by as one of its members walked into dangers unknowable to her.

### **BREACH OF CONTRACT**

In this jurisdiction, a contract is established when there is an offer; an acceptance of that offer and bargained-for consideration.

In this case, the AFT offered to represent the Plaintiff in employment dealings concerning the CCISD, as it does in school districts across the nation. The Plaintiff agreed by paying her monthly union dues.

By accepting the monthly payments, the AFT agreed to represent the Plaintiff in employment matters concerning CCISD.

This contract was breached when the AFT colluded with the CCISD to keep the *secret room* secret and sacrifice the Plaintiff's career at the CCISD to facilitate that goal, and the additional goal of protecting the federal funding the *secret room* generated. Further, the AFT had long known about the *secret room* and the inherent dangers, occupational hazards and unsafe conditions therein. This notwithstanding, the AFT stood by as union members were placed in harm's way within the confines of the *secret room*.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff seeks $3 million general damages for physical and emotional pain and suffering, and for loss of the enjoyment of life.

Further, the Plaintiff seeks $5 million punitive damages.

## INJUNCTIVE RELIEF

### I

The Plaintiff asks that the Defendant be enjoined from concealing known occupational hazardous conditions within any classroom staffed by an AFT member.

### II

That the Defendant be ordered to conduct training and education for AFT members concerning reporting unsafe work conditions.

### III

That the Defendant be ordered to implement a policy whereby AFT members are trained to understand the concept of Free Appropriate Public Education under the Rehabilitation Act of 1973, whereby the rights of troubled students are protected.

## **TRIAL BY JURY**

The Plaintiff requests a trial by jury.

Respectfully Submitted,

Sabrina Marie Wadhams by her Attorney,

_____/s/_____
Mark Ellis O'Brien
17 D Fernwood Drive
Leominster, Massachusetts 01453
978.990.6105.
justice457@gmail.com

9 October 2019